[Civ. No. 6611. Third Dist. Apr. 3, 1942.]

CHRIS ESCOBAR, Jr., a Minor, etc., et al., Respondents, v. MARY McNIEL et al., Appellants.

Butler, Van Dyke & Harris for Appellants.

Henry S. Lyon and Robert E. Roberts for Respondents.

STEEL, J. pro tem.—The defendants appeal from a judgment entered in favor of plaintiffs pursuant to the verdict of a jury. The sole error assigned in this appeal is whether or not the plaintiffs were guilty of contributory negligence as a matter of law. The essential facts are without dispute and may be summarized as follows:

The action is one for damages alleged to have been sustained by plaintiffs as a result of an accident which occurred on a Sunday afternoon in November, 1939, on U. S. Highway 50, approximately four and one-half miles west of Placerville, in El Dorado county.

The appellant Mary McNiel, accompanied by her husband George P. McNiel (since deceased) was riding in their Chrysler automobile, and at the time of the accident it was being driven by appellant Owen Daniel Brown, westerly along said highway.

The plaintiffs, respondents here, minor high school boys of the ages of 17 and 16 respectively, were pedestrians and on their way home at the time of the accident. As they approached the highway from a side road they observed some friends passing in a car traveling westerly which the boys signaled for a ride. Respondents were then approximately 250 feet from the highway, and the car, hereinafter referred to as the Smith car, did not stop at once but proceeded along the highway some 380 feet to a point about midway in a cut where it was brought to a stop partly on and partly off the paved portion of the highway. The respondents, upon reaching the highway from the side road, looked for oncoming traffic, and seeing none, proceeded directly across the highway

to the northerly side and then walked and ran westerly along the north shoulder toward the Smith car. As they approached the car from the rear they went to the left side thereof and had just engaged in a conversation with some of the occupants when the defendant's car, traveling westerly also, approached and struck them, hurling them forward and to the ground in front of the parked Smith car, resulting in the injuries sustained.

Upon the trial, plaintiffs' witness, a civil engineer, produced a profile map which was received in evidence showing the physical condition of the highway in the vicinity of the scene of the accident.

As already indicated the accident occurred about midway in a cut with sloping embankments, the length of which was some 600 feet or more. The width of the paved portion of the highway through the cut is 22.4 feet with a white center line, and has a shoulder on either side from five to six feet in width. As a car approaches from the east, that is the Placerville direction, the highway descends somewhat, and at a point some 2,000 feet east of the accident it would disappear from the view of one at the scene of the accident, and after reaching the bottom of the dip or grade it gradually ascends, and at a point some 1,050 feet east of the accident scene it would again come into view, from that point on the grade flattens out almost to level, giving one a clear and unobstructed view for the entire distance last mentioned.

It is the testimony of appellants that they did not see the two boys prior to the impact, and it was only after appellant Mrs. McNiel, who was sitting in the front seat, suggested to Mr. Brown, the driver of the car, "I think you struck something" that they pulled to one side and stopped several feet beyond the Smith car. The evidence shows that the accident happened around four o'clock P.M. of the day in question, that it was a clear day and the setting sun was shining very brightly as appellants drove toward it traveling westerly. Appellant Mrs. McNiel testified that she held her hand up to shade her eyes; that they were traveling between 40 and 45 miles per hour, and that she saw the Smith car which stopped partly on the highway and partly on the shoulder but that she did not see the boys until after the accident.

Defendants' Exhibit A is a photograph taken by a gentleman immediately after the accident and admittedly shows a good reproduction of the conditions at the scene of the acci-

dent immediately after its occurrence. The Smith car is shown parked as above indicated and appears to have been parked as nearly off the pavement and adjacent to the embankment as was practical. Appellant Brown testified in substance to the same effect as did Mrs. McNiel with reference to the speed of the car, the glaring sun, and seeing the Smith car but not seeing either of the boys until after the accident. Appellants further testified that another car was parked approximately opposite the Smith car facing easterly, and that as they approached the scene a car traveling at a high rate of speed coming toward them, passed as they were passing between the two parked cars. There is some conflict in the testimony as to the car being parked opposite the Smith car, some of its occupants testifying that it was parked up the highway a considerable distance. However, this becomes immaterial, as appellants at the outset, concede that there is evidence in the record sufficient to support the jury's implied finding of negligence upon the part of Brown, the driver of the defendant's car.

Appellants contend that the fact respondents crossed the highway and then proceeded to run and walk along the shoulder on the north side and in the direction traffic was traveling, which is in direct opposition to the provisions of Section 564 of the Vehicle Code, constitutes negligence *per se*. While this is the general rule (19 Cal. Jur. 632 and cases there cited) it is also the general rule that the issue of contributory negligence is one for the jury or trier of the facts to determine, and will not be disturbed upon appeal unless it can be said that such negligence contributed directly to the plaintiff's injury, in which event it became an issue of law. Clearly it cannot here be said, as a matter of law, that the act of respondents, in traversing along the northerly side of the highway was a proximate cause of the accident nor can it likewise be said as a matter of law, that the failure of the boys to look back along the highway as they passed to the left side of the Smith car constituted contributory negligence directly or proximately causing their injury. These were questions for the jury.

The undisputed evidence shows that they were standing close up and within a foot of the side of the Smith car, one of the boys with his foot on the running board, and had engaged in a short conversation with some of the occupants when they were struck.

Edward H. Smith who was seated in the rear seat of the Smith car testified as follows:

"Q. Now as you went down the highway where did you first see the Escobar boys? A. I saw them across, coming out of the golf road.

Q. Now, explain to the jury just exactly what happened after that; what did your son do with his car? A. He drove along, we seen them and he said, 'Oh, I ain't going to stop.' He pulled up maybe four or five hundred feet or something like that and he dropped out his hand and stopped. He says, 'I will give them a ride.' And he pulled up right against the bank and stopped. The little boys crossed the road and came up behind the car.

Q. How do you know they crossed the road? A. I was looking through the back window.

Q. Did you watch them all the way down the road? A. Practically all the way down, yes, sir.

Q. Where were they traveling? A. Traveling right up against the righthand side of the road coming up behind the car.

Q. Were they on the paved portion or off on the shoulder? A. They were onto the shoulder, right against the cut, right against the bank.

Q. And what happened as they reached the Smith car, the car which your son was driving and you were in? A. They stepped around the car.

Q. Did you see them do that? A. Yes, sir, I seen them as they went to make the turn and then they appeared at the window.

Q. The window at which side of the car? A. On the left side.

Q. Now you were looking back through the back of the car, the back window? A. As they were coming up I was looking through the back window.

Q. And you were looking that way when you saw them from the door? A. Yes, sir, and then I turned to the window.

Q. *As you saw the boys making that turn did you see any other car coming from down the highway? A. I did not.*"

It would appear, therefore, that the jury might well have drawn the inference that appellant's car had not come into vision from the so-called dip when the respondents turned to the left and came to the side of the Smith car. It will be recalled that appellants both testified that they did not see the boys at all prior to the accident.

The jury having found by its verdict that respondents were not guilty of contributory negligence, it becomes a question of law only when the court "is impelled to say that from the facts reasonable men can draw but one inference, and that an inference pointing unerringly to the negligence of the plaintiff contributed to his injury. (*Reaugh* v. *Cudahy Packing Co.*, 189 Cal. 335 [208 Pac. 125].)

The judgment is affirmed.

Thompson, Acting P. J., and Tuttle, J., concurred.